UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                              )
REGINALD BUTLER,              )
                              )
             Petitioner,      )
                              )          CIVIL ACTION
         v.                   )          No. 13-11346-WGY
                              )
LISA A. MITCHELL,             )
                              )
             Respondent.      )
_____)

YOUNG, D.J.                                      May 19, 2015

MEMORANDUM AND ORDER

I.    INTRODUCTION

        In this petition for a writ of habeas corpus, the

petitioner, Reginald Butler ("Butler"), challenges his

conviction for rape in the Massachusetts Superior Court sitting

in and for the County of Suffolk.  He brings two claims: (1)

that the eleven-and-a-half-year delay between the issuance of a

criminal complaint in 1991 and the commencement of his trial in

2003 violated his Sixth Amendment right to a speedy trial, and

(2) that his appellate counsel was ineffective for failing to

raise the speedy trial issue on direct appeal.

        A.    State Trial Court Proceedings

        In Commonwealth v. Butler, 464 Mass. 706 (2013), the

Massachusetts Supreme Judicial Court ("Supreme Judicial Court")

1

concisely laid out the procedural history and facts of this

case, which this Court now "supplement[s] with other record

facts consistent with the [Supreme Judicial Court's] findings."

Yeboah-Sefah v. Ficco, 556 F.3d 53, 62 (1st Cir. 2009) (quoting

Healy v. Spencer, 453 F.3d 21, 22 (1st Cir. 2006)).

> On September 16, 1991, a criminal complaint and an
> arrest warrant issued from the Chelsea Division of the
> District Court Department against the defendant for
> rape in violation of [Massachusetts General Laws ch.]
> 265, § 22 (b), and unarmed burglary in violation of
> [Massachusetts General Laws ch.] 266, § 15, both
> alleged to have occurred three days earlier. On May
> 21, 1992, a warrant for the defendant's arrest for
> these crimes was lodged at the correctional
> institution where the defendant was serving a sentence
> on unrelated charges. It appears from the docket that
> court personnel in the District Court failed to enter
> details concerning the warrant in the warrant
> management system as required by [Massachusetts
> General Laws ch.] 276, § 23A. In January, 1993, while
> still incarcerated on the unrelated charges, the
> defendant signed a form requesting a speedy trial on
> the 1991 complaint. Although the District Court
> received the defendant's request, the form was not
> docketed and no action was taken on the request. A
> department of correction "summary/key issues" report
> dated April 14, 1993, stated that rape and burglary
> charges against the defendant were outstanding;
> however, subsequent "summary/key issues" reports
> issued between 1994 and 1997, which the defendant
> signed, stated that the defendant had "no outstanding
> legal issues."
>
> The defendant completed his sentence on the unrelated
> charges and was released on June 21, 1997. Three days
> later, a second warrant for his arrest issued on the
> rape and burglary charges. The defendant was arrested
> and arraigned in District Court on the 1991 complaint
> on March 11, 1998. On April 10, 1998, however, the
> charges against him were dismissed without prejudice
> because the Commonwealth was unable to locate the rape
> victim.

> The Commonwealth subsequently renewed contact with the
> victim and, on March 23, 1999, nearly one year
> following the dismissal of the charges, obtained
> aggravated rape and unarmed burglary indictments
> against the defendant.  The defendant was arraigned in
> Superior Court on May 6, 1999.

Butler, 464 Mass. at 708.

On June 30, 2000, Butler moved in the Superior Court to dismiss his indictment, alleging violations of (1) his federal and state constitutional rights to a speedy trial, (2) preindictment delay in violation of due process, and (3) violation of Massachusetts Rule of Criminal Procedure 36(c).[1] Supp. Answer ("S.A.") 499, ECF No. 17.  After briefing, the Superior Court denied Butler's motion to dismiss on December 7, 2000.  S.A. 537-44.

> The defendant's trial began on May 5, 2003, where the
> issue was not whether intercourse occurred (the fact
> of intercourse was established by deoxyribonucleic
> acid [DNA] evidence and conceded by the defendant),
> but whether, as the defendant claimed, the victim
> consented to sexual intercourse in exchange for drugs.
> A jury convicted the defendant of the lesser included
> offense of rape, and acquitted him of unarmed
> burglary.

Butler, 464 Mass. at 708-09.  Butler was sentenced to 9 to 15 years in prison, to be served on or after an unrelated sentence he was already serving.  S.A. 10.

---

[1] Massachusetts Rule of Criminal Procedure 36(c) provides for dismissal in the event of prejudicial delay on the part of the prosecuting attorney.

## B. State Direct Appeals

On September 14, 2005, Butler filed a direct appeal with the Appeals Court of Massachusetts. See Commonwealth v. Butler, 68 Mass. App. Ct. 658 (2007); see also S.A. 16-70. He argued that the Superior Court's denial of his motion to dismiss under Massachusetts Rule of Criminal Procedure 36 was in error. S.A. 24. In the appeal, he did "not present any claim that his right to a speedy trial as guaranteed by the State or Federal Constitution was violated." Butler, 68 Mass. App. Ct. at 659 n.2. The Appeals Court therefore denied the appeal, and affirmed his conviction. Id. at 667.

Then, on June 25, 2008, Butler moved in Superior Court for a new trial, arguing that his appellate counsel had "rendered ineffective assistance . . . by failing to argue to the Appeals Court that his right to a speedy trial" under the federal and state constitutions had been violated by the long gap between the period the criminal complaint was issued and his eventual trial. S.A. 545. This motion was denied in the Superior Court on May 22, 2009, S.A. 558, and affirmed by the Appeals Court two years later, on July 8, 2011, Commonwealth v. Butler, 79 Mass. App. Ct. 751, 759 (2011).

Finally, on July 25, 2011, Butler appealed to the Supreme Judicial Court, S.A. 781, which rendered its decision on March 26, 2013, Butler, 464 Mass. at 706. The court first ruled that

under Article 11 of the Massachusetts Declaration of Rights, "the speedy trial clock starts when a Massachusetts criminal complaint issues," id. at 707, and thus the more than ten-year delay between complaint and trial was "presumptively prejudicial," id. at 714. The court then analyzed the speedy trial framework as set out by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514 (1972), and Doggett v. United States, 505 U.S. 647 (1992), and after balancing the relevant factors, held that Butler's rights to a speedy trial were not violated. Id. at 719-20. The Supreme Judicial Court thus concluded that because "the decision not to advance a losing argument" did not violate Butler's right to counsel, his ineffective assistance claim could not lie. Id.

### C. Federal Habeas Petition

On June 24, 2013, Butler filed a habeas petition in federal district court. Pet., ECF No. 1. He supplemented this petition with a memorandum of law on July 3, 2013. Mem. Supp. Pet. Habeas Corpus ("Pet. Mem."), ECF No. 5. Lisa A. Mitchell, the respondent (the "Commonwealth"), responded on August 15, 2013. Resp't's Mem. Law Opp'n Pet. Writ Habeas Corpus ("Resp't's Mem."), ECF No. 19.

## II. ANALYSIS

### A. AEDPA Standard of Review

A federal district court reviewing the judgment of a state court that was adjudicated on the merits is subject to the constraints of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214 (1996). AEDPA establishes a "formidable barrier to federal habeas relief," Burt v. Titlow, 134 S. Ct. 10, 15 (2013), and dictates that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Petitions under this provision are not to be granted lightly, as "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

Under the "contrary to" prong of AEDPA review, the First Circuit has held that "[a] state court decision is contrary to clearly established federal law if it 'contradicts the governing law set forth in the Supreme Court's cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court' but reaches a different result." Companonio v. O'Brien, 672 F.3d 101, 109 (1st Cir. 2012) (quoting John v. Russo, 561 F.3d 88, 96 (1st Cir. 2009)); see also Williams v. Taylor, 529 U.S. 362, 405 (2000) (holding that a decision is "contrary to" clearly established Supreme Court precedent if it is "'diametrically different,' 'opposite in character or nature,' or 'mutually opposed'" to such precedent). This prong, therefore, is used when the state court clearly applies the wrong rule to the legal question at hand.

The unreasonable application prong, on the other hand, applies when:

> [T]he state court correctly identifies the governing legal principles, but (i) applies those principles to the facts in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply.

Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007).

Unreasonable application requires something that is beyond being "merely erroneous or incorrect," id., but must be

something such that "fairminded jurists" would agree that the application is objectively unreasonable. <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. 1388, 1402 (2011) (quoting <u>Harrington</u>, 562 U.S. at 101); <u>Grant</u> v. <u>Warden, Me. State Prison</u>, 616 F.3d 72, 76 (1st Cir. 2010). Moreover, the scope of the legal rule at question determines whether it has been unreasonably applied. "If the legal rule is specific, the range of reasonable judgments is correspondingly narrow. Conversely, if the legal rule is general, the range of reasonable judgments is likely to be broad." <u>Foxworth</u> v. <u>St. Amand</u>, 570 F.3d 414, 425 (1st Cir. 2009); <u>see also</u> <u>Yarbourough</u> v. <u>Alvarado</u>, 541 U.S. 652, 664 (2004) ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

**B. Right to a Speedy Trial**

**1. Constitutional Protections**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI. This right is "fundamental," and is incorporated against the states by the Due Process Clause of the Fourteenth Amendment. <u>Klopfer</u> v. <u>North Carolina</u>, 386 U.S. 213, 223 (1967); <u>Barker</u>, 407 U.S. at 515. In comparison to many other constitutional rights, however, the right to a speedy trial is a "more vague concept than other procedural rights," and the

Supreme Court has eschewed a bright-line rule establishing when it has been violated. Barker, 407 U.S. at 521. Instead, the court established a four-factor balancing test "which courts should assess in determining whether a particular defendant has been deprived of his right." Id. at 530.

The first factor is the length of delay, which serves as a "triggering mechanism," and unless "there is some delay which is presumptively prejudicial," the inquiry ceases. Id. The Supreme Court has held that a one-year post accusation delay will generally require a full review. Doggett, 505 U.S. at 652 n.1. Second is the reason for the delay, and the Supreme Court sets out three tiers for how such a delay ought be balanced:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Barker, 407 U.S. at 531; see also Doggett, 505 U.S. at 657 (holding that "negligence [is not] automatically tolerable simply because the accused cannot demonstrate exactly how it prejudiced him"). In evaluating such diligence, the court must "review trial court determinations of negligence with considerable deference." Doggett, 505 U.S. at 652.

Third is the defendant's assertion of his right, which can cut two ways: the assertion of the right "is entitled to strong evidentiary weight" in determining deprivation, while, conversely, "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 531-32.

Finally, the court must consider prejudice to the defendant, evaluated "in the light of the interests of defendants which the speedy trial right was designed to protect." Id. at 532. Those interests are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. The last of these three interests is the most important. Id. Moreover, "affirmative proof of particularized prejudice is not essential to every speedy trial claim," Doggett, 505 U.S. at 655, and "[w]hile such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with length of delay." Id. at 655-56. If the trial has been delayed long enough, the government must "persuasively rebut[]" the

presumption of prejudice in order to defeat a speedy trial claim.[2]  Id. at 658.

The Supreme Court has, however, taken care to recognize that judicial judgment is particularly important in this balancing inquiry, stating that:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.  In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

Barker, 407 U.S. at 533.

### 2.    Determining the Relevant AEDPA Prong

As a threshold issue, this Court must determine which of AEDPA's prongs applies.  In his brief, Butler challenges the Supreme Judicial Court's decision under both the contrary to and unreasonable application provisions.  See Pet. Mem. 11.  The Commonwealth, in turn, argues that the state court's decision could only implicate the unreasonable application prong.  See Resp't's Mem. 11.  This Court agrees with the Commonwealth.

---

[2] The specific time necessary to trigger this burden on the government is unclear, but the Supreme Court has held that six years of delay caused by government negligence is sufficient. Doggett, 505 U.S. at 658.  In such cases, moreover, the Supreme Court has also suggested that merely "ably counter[ing] [the defendant's] efforts to demonstrate particularized trial prejudice" is not enough, but rather the government must "affirmatively prove[] that the delay left [the defendant's] ability to defend himself unimpaired."  Id. at 658 n.4.

AEDPA's "contrary to" prong "governs only a narrow range of cases where a state court applies the wrong rule to decide a question of law." Matney v. Battles, 26 F. App'x 541, 543 (7th Cir. 2001) (citing Williams, 529 U.S. at 405); see also Britto v. Ficco, No. 01-cv-11445-NG, 2011 WL 1560922, at *4 (D. Mass. Apr. 23, 2011) (Gertner, J.). So long as the state court "correctly deduced . . . the controlling Supreme Court precedent," this prong is inapplicable. Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002). In a speedy trial case, the state court need only determine that Barker and Doggett are the controlling precedent, see id., and here, the Supreme Judicial Court did just that, while also correctly articulating Barker's four-factor test, as modified by Doggett. See Butler, 464 Mass. at 714-19. Thus, the state's decision was not contrary to Supreme Court precedent, and it passes AEDPA muster on that ground.[3]

### 3. Unreasonable Application by the Supreme Judicial Court

This Court's task, then, is to determine whether the Supreme Judicial Court unreasonably applied the Barker factors.

_____

[3] A state court decision may also be contrary to Supreme Court precedent "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite." Williams, 529 U.S. at 405. Here, Butler cannot point to any Supreme Court precedent with materially indistinguishable facts, nor does this Court's independent research reveal any such case.

In so doing, the Court does not look exclusively to the specific application of any individual factor, but rather, "it is the strength of the state court's ultimate conclusion, rather than its announced rationale, that must be evaluated." Rashad, 300 F.3d at 35. When, as here, the state court decision is subject to the strictures of AEDPA review, the federal court must also "give the widest of latitude to a state court's conduct of its speedy-trial analysis." Amos v. Thornton, 646 F.3d 199, 205 (5th Cir. 2011) (per curium).

### a. Length of Delay

The first Barker factor, length of delay, operates "to some extent [as] a triggering mechanism," and unless the delay reaches the level of "presumptively prejudicial," the reviewing court need not consider the remaining three Barker factors. Barker, 407 U.S. at 530. One year is usually sufficient to trigger the full speedy trial analysis. See Doggett, 505 U.S. at 652 n.1. If that full analysis is implicated, the "extent to which the delay stretches beyond the bare minimum" is a factor the court must consider in its analysis. Id. at 652.

In order to calculate the length of delay, this Court must first determine when the speedy trial clock started. The Supreme Court is clear that the Sixth Amendment right to a trial is triggered after there has either been "a formal indictment or information or else the actual restraints imposed by arrest and

13

holding to answer a criminal charge." <u>United States</u> v. <u>Marion</u>,
404 U.S. 307, 320 (1971); <u>see also</u> <u>United States</u> v. <u>MacDonald</u>,
456 U.S. 1, 6 (1982) (noting that the right attaches when "a
defendant is indicted, arrested, or otherwise officially
accused").  Thus, the latest Butler's right attached was March
23, 1999, when he was indicted on aggravated rape and unarmed
burglary charges.[4]  <u>See</u> <u>Butler</u>, 464 Mass. at 708.  The more
complicated question is whether the right attached seven-and-a-
half years earlier, on September 16, 1991, when a criminal
complaint and arrest warrant were issued against Butler.  <u>Id.</u>
The Supreme Judicial Court – applying Article 11 of the
Massachusetts Declaration of Rights – concluded that it did.
<u>Id.</u> at 712.

The Supreme Court has not, however, clearly concluded that
the United States Constitution provides an equivalent

_____

[4] Butler was first indicted on March 11, 1998, but these
charges were dismissed one month later, on April 10, 1998.
<u>Butler</u>, 464 Mass. at 708.  Both Butler and the Commonwealth
agree that because "[i]t is settled that the dismissal of
pending charges, acting in good faith, 'stops' the speedy trial
clock," the time between the dismissal of the first indictment
and the return of the subsequent indictment "does not count
against the Commonwealth."  <u>Id.</u> at 713 n.10 (citing <u>MacDonald</u>,
456 U.S. at 7-8).
As the Supreme Judicial Court noted, however, it is unclear
whether, under Supreme Court precedent, the time between an
initial indictment and its subsequent dismissal counts toward
the speedy trial clock.  <u>See</u> <u>id.</u> at 713-14.  Thus, this Court is
disposed not to charge that month against the Commonwealth.
Even if it could be charged, however, one month would not alter
this Court's analysis of the Supreme Judicial Court's decision.

14

protection.  In order to explore this issue, circuit court

decisions are helpful in illustrating the scope of the federal

constitutional right.[5]  See Ouber v. Guarino, 293 F.3d 19, 26

(1st Cir. 2002).  In Rashad, the First Circuit, interpreting the

Supreme Court's MacDonald and Marion decisions, concluded that a

criminal complaint did not trigger the speedy trial clock so

long as it was "unaccompanied by any public accusation or act of

detention."  Rashad, 300 F.3d at 36.  Moreover, in United States

v. Boskic, the First Circuit concluded that a federal criminal

complaint does not trigger attachment of Sixth Amendment Rights.

545 F.3d 69, 83 (1st Cir. 2008).  It reasoned that the complaint

"does not involve the appearance of the defendant before a

judicial officer," unlike an arraignment, nor does it require

"the participation of a prosecutor," unlike an indictment or

information.  Id.  Because such a document does not mark the

transition from the "investigation to prosecution," id. at 83

n.14, the First Circuit concluded that "it is not surprising

that the [Supreme] Court has never listed a 'complaint' – a

commonly used method of initiating charges against suspected

criminals – as one of the specifically enumerated examples of

events that trigger the Sixth Amendment right."  Id. at 83.

---

[5] As the Supreme Judicial Court correctly noted, federal and
state courts are divided on whether a criminal complaint starts
the speedy trial clock for federal constitutional purposes.  See
Butler, 464 Mass. at 711 n.6.

The equivalent Massachusetts rule concerning criminal complaints closely resembles the federal rule. Massachusetts Rule of Criminal Procedure 3 outlines the complaint process:

> (1) Procedures for Obtaining a Complaint: Any person having knowledge, whether first hand or not, of the facts constituting the offense for which the complaint is sought may be a complainant. The complainant shall convey to the court the facts constituting the basis for the complaint. The complainant's account shall be either reduced to writing or recorded. The complainant shall sign the complaint under oath, before an appropriate judicial officer.
>
> (2) Probable Cause Requirement. The appropriate judicial officer shall not authorize a complaint unless the information presented by the complainant establishes probable cause to believe that the person against whom the complaint is sought committed an offense.

Mass. R. Crim. P. 3(g). There is neither a requirement for prosecutorial involvement, nor the requirement that the defendant appear before the judicial officer. Federal Rule of Criminal Procedure 3 similarly requires a written statement made under oath to a judicial officer, Fed. R. Crim. P. 3, who must find probable cause before she signs an arrest warrant, Fed. R. Crim. P. 4(a). Following the reasoning of Rashad and Boskic, then, this suggests that the speedy trial right does not attach at the time the criminal complaint is filed. Moreover, the Supreme Court is clear that an unexecuted arrest warrant does not trigger the Sixth Amendment, only the "actual restraints

imposed by arrest and holding to answer a criminal charge."
Marion, 404 U.S. at 320.

Thus, it appears that neither a criminal complaint nor an unexecuted arrest warrant triggers a defendant's Sixth Amendment rights, and in any event, this Court cannot hold that the Supreme Court has concluded the opposite. Accordingly, Butler's speedy trial right attached in 1999, when he was arraigned on this charge, not in 1991, when the complaint was first issued. See Butler, 464 Mass. at 708. Given that his trial did not begin until 2003, however, this four-year gap is definitely long enough to trigger the full Barker analysis, as the Commonwealth concedes.[6] Resp't's Mem. 17.

### b. Reason for Delay

The second Barker factor is the reason for the delay, and the commensurate three-tiered weighting thereof. "[D]eliberate . . . delay" on the part of the state is "weighted heavily against the government," a "more neutral reason such as negligence" is "weighted less heavily but nevertheless should be considered," and a "valid reason" justifies the delay. Barker,

---

[6] This Court also observes that a four-year delay, while lengthy, is less than the five-year delay the Supreme Court found insufficient to create a speedy trial violation in Barker. 407 U.S. at 534-36. Four years is also within the "length of delay" zone that circuit courts have found to satisfy the requirement for a speedy trial. See, e.g., Flowers v. Warden, Conn. Corr. Inst., Somers, 853 F.2d 131, 133 (2d Cir. 1988) (collecting cases).

407 U.S. at 531. Similarly, a delay caused by the defendant's own actions does not ordinarily count against the state. See United States v. Loud Hawk, 474 U.S. 302, 317 (1986).

Here, the Supreme Judicial Court found that of the four years from indictment to trial, only 310 days were attributable to the Commonwealth. The remainder "were either at the defendant's request or by agreement of the defendant's counsel." Butler, 464 Mass. at 716 (citing Butler, 68 Mass. App. Ct. at 664-65). Moreover, of those days that are fairly chargeable to the state, the Appeals Court found that "there is nothing to show that the delay was caused by conduct of the prosecutor that was 'unreasonably lacking in diligence.'" Butler, 68 Mass. App. Ct. at 665 (quoting Commonwealth v. McDonald, 21 Mass. App. Ct. 368, 374 (1986)). This delay would thus be, at worst, the result of negligence, rather than bad faith on the part of the Commonwealth.

Under Doggett, trial court determinations of negligence are to be reviewed with "considerable deference." 505 U.S. at 652. Furthermore, under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct," a presumption the applicant can only rebut by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also John v. Russo, 561 F.3d 88, 92 (1st Cir. 2009) (discussing AEDPA presumption of factual correctness). Here, Butler offers no evidence to rebut

the Massachusetts state court's determination that 310 days of
the four years between indictment and trial should be charged to
the government.  Thus, given that most of the chargeable delay
was caused by the defendant, and what remains is not the product
of bad faith, the Supreme Judicial Court's conclusion that this
prong "weighs only lightly against the Commonwealth" is not
unreasonable.  Butler, 464 Mass. at 716.

### c.  Defendant's Assertion of His Right

The third Barker factor is "the defendant's responsibility
to assert his right."  407 U.S. at 351.  Here, the Supreme
Judicial Court, Butler, and the Commonwealth, focus on the fact
that "[i]t is undisputed that [Butler] signed a form requesting
a speedy trial . . . in January, 1993, while he was incarcerated
on unrelated charges," and argue over the significance of this
assertion.  Butler, 464 Mass. at 716; see also Pet. Mem. 11-15;
Resp't's Mem. 18-22.

Such discussion, however, sidesteps the key issue: at that
time, Butler had no speedy trial right to assert.  As discussed
above, Butler's right to a speedy trial did not attach until he
was indicted in 1999.  Thus, insomuch as Barker considers "the
defendant's assertion of his right," 407 U.S. at 530 (emphasis
added), and because he did not yet have a speedy trial right in
1993 when he filed a form "request[ing] a prompt trial or
disposition of the criminal charge(s) pending against [him],"

S.A. at 498, signing such a form cannot satisfy <u>Barker</u>'s

assertion requirement.

In <u>Rashad</u>, the First Circuit dealt with a closely analogous

situation, and its reasoning is instructive here:

> The petitioner argues that he discharged his burden of
> asserting the speedy trial right when he wrote to the
> Boston Municipal Court in September of 1986 [before he
> was indicted], inquiring about the possibility of
> being 'brought forward' on the charges.  We
> emphatically disagree.
>
> It must be recalled that, when the petitioner authored
> that letter, there was no indictment pending against
> him – a circumstance largely attributable to the fact
> that he had been a fugitive from justice for upwards
> of two years.  Thus, the communiqué was sent <u>before</u>
> the Sixth Amendment right to a speedy trial attached.
> . . .
>
> The timing is critical.  The usual rule is that a
> notice sent before the formal commencement of a
> criminal case is deemed premature (and, therefore,
> carries little weight) for speedy trial purposes.  <u>See</u>
> <u>United States</u> v. <u>Henson</u>, 945 F.2d 430, 438 (1st Cir.
> 1991) (finding premature a "letter request sent to the
> district court before any federal charges had been
> lodged").

<u>Rashad</u>, 300 F.3d at 39.

In conducting its AEDPA review, this Court is, of course,

bound only by decisions of the Supreme Court, not the First

Circuit.  Circuit decisions, are, however, useful insomuch as

they "provide evidence that Supreme Court precedents have

clearly established a rule as of a particular time or to shed

light on the reasonableness of the state courts' application of

existing Supreme Court precedents." <u>Renico</u> v. <u>Lett</u>, 559 U.S.

766, 796 (2010) (Stevens, J., dissenting) (quoting 2 R. Hertz &

J. Liebman, Federal Habeas Corpus Practice & Procedure § 32.3,

p.1585, n.10 (5th ed. 2005)).  Here, Rashad, combined with the

plain text of Barker, strongly indicate that a pre-indictment

request for a speedy trial is not an assertion of the

defendant's attached Sixth Amendment right, and is thus entitled

to little, if any, weight.

In June 2000, fifteen months after he was indicted, Butler

moved to dismiss the indictment on speedy trial grounds, which

was denied in December 2000.  S.A. 499, 544.  Such a motion,

however, does not necessarily indicate that Butler asserted his

speedy trial right.  See Barker, 407 U.S. at 535 ("The record

does not show on what ground this motion [to dismiss the

indictment] was based, although it is clear that no alternative

motion was made for an immediate trial.  Instead the record

strongly suggests that while he hoped to take advantage of the

delay in which he had acquiesced, and thereby obtain a dismissal

of the charges, he definitely did not want to be tried.");

United States v. Frye, 489 F.3d 201, 212 (5th Cir. 2007)

("[Defendant]'s repeated motions for dismissal of the capital

charge are not an assertion of the right, but are an assertion

of the remedy.  A motion for dismissal is not evidence that the

defendant wants to be tried promptly.").  In this case, there is

no evidence that Butler filed any accompanying motion for an immediate trial.  <u>See</u> S.A. 6-9.

Thus, because there is no clear evidence of Butler's assertion of his speedy trial right after the right attached, this <u>Barker</u> factor is, at best, neutral, and more likely cuts against him.

### d.    Prejudice to the Defendant

The final <u>Barker</u> factor is prejudice to the defendant.  407 U.S. at 530.  The Supreme Court, however, is not entirely precise about how this factor is to be applied, and thus the Court will indulge in a brief discussion about prejudice.

In <u>Doggett</u>, the Supreme Court clarified that the reviewing court must consider two distinct types of presumptive prejudice: threshold prejudice and substantive prejudice.  First, as discussed previously, is that a sufficiently long lag, usually a year, between indictment/arrest and trial is "presumptively prejudicial," which then triggers the full <u>Barker</u> inquiry. <u>Doggett</u>, 505 U.S. at 652.  For ease of reference, this type of prejudice can be termed "threshold prejudice."  Second, there is also a form of presumptive prejudice called substantive prejudice, which plays a role in the reviewing court's analysis of the fourth <u>Barker</u> factor.  Here, the Supreme Court recognizes that because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or,

for that matter, identify," id. at 655, the defendant need not demonstrate "particularized trial prejudice" in all cases, id. at 657.  The Supreme Court has held that relief from the need to show actual prejudice usually comes into play when the government is negligent in prosecuting its case.  See id. at 656-57.  This type of prejudice can be called "substantive prejudice" or "non-particularized prejudice."

The Supreme Court, however, did not clearly draw the line dividing situations where non-particularized prejudice, standing alone, warrants relief, and where it does not.  It does set out several principles that courts must use to determine that line.  First, the Supreme Court states that "[t]o be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice."  Id. at 657.  Second, while the Court did not set out a definition of "lasted longer," it did conclude that a lag between indictment and arrest of eight-and-a-half years, with six years caused by "the Government's inexcusable oversights," was sufficient.  Id. Finally, it ruled that "[w]hen the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review [i.e., one year], and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively

rebutted, the defendant is entitled to relief."  Id. at 658

(internal citations omitted).

Beyond that standard of six years caused by government

negligence, the Supreme Court has not provided on-point guidance

as to where non-particularized prejudice is sufficient.  The

circuit courts, though of course they do not control, are all

over the map in how they treat non-particularized versus

particularized prejudice.[7]

In this case, the delay between indictment and trial was

four years, with 310 days attributable to the Commonwealth.

Both delays fall far below those that the Doggett court

considered sufficiently excessive so as to justify a presumption

of non-particularized prejudice.  Thus, this Court cannot

conclude that non-particularized prejudice may be presumed in

---

[7] See, e.g., United States v. Battis, 589 F.3d 673, 683 (3d
Cir. 2009) (non-particularized prejudice may be presumed after
45-month delay in bringing defendant to trial, with 35 months
attributable to the government); Goodrum v. Quarterman, 547 F.3d
249, 260 (5th Cir. 2008) (Doggett presumption of non-
particularized prejudice only applies where delay is at least
five years); Jackson v. Ray, 390 F.3d 1254, 1263-64 (10th Cir.
2004) (Doggett non-particularized showing of prejudice rule only
applies if government-caused delay is six or more years,
otherwise particularized showing of prejudice is required);
United States v. Dunn, 345 F.3d 1285, 1296 (11th Cir. 2003)
(defendant must show actual prejudice unless the first three
Barker factors "uniformly weigh heavily against the
government."); United States v. Brown, 169 F.3d 344, 351 (6th
Cir. 1999) (government-created pretrial delay of more than sixty
months triggers Doggett non-particularized presumption); United
States v. Shell, 974 F.2d 1035, 1036 (9th Cir. 1992) (five year
delay triggers Doggett presumption).

this case, and must look to whether there is evidence that the delay in trial caused Butler particularized prejudice.[8] In so doing, it evaluates prejudice in light of three purposes of the speedy trial clause: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense would be impaired." Barker, 407 U.S. at 532.

The first factor in evaluating prejudice is oppressive pretrial incarceration. The record on this point is not crystal-clear, although it does not appear that Butler was incarcerated for this crime during the four years between indictment and trial.[9] In any event, even were he incarcerated,

---

[8] In his briefing, Butler extensively argues that the Supreme Judicial Court erred by failing to apply the Doggett presumption of non-particularized prejudice, which, he argues, could only be rebutted if the Commonwealth affirmatively proved the absence of prejudice. Pet. Mem. 15-19. As discussed above, because Butler's pre-trial delay falls short of the six years attributable to the government in Doggett, this presumption does not apply, at least not for the purposes of AEDPA review.

[9] Much (but not all) of the evidence suggests that he was not incarcerated on this charge during the four-year gap. First, the Supreme Judicial Court stated that "[t]he record indicates that the defendant was not incarcerated on the 1991 complaint at any point during the delay prior to his trial, and was only subject to bail for one month." Butler, 464 Mass. at 719. Second, the trial judge set bail at $500,000 with a surety or $50,000 cash without one, S.A. 6, and in the 2000 decision denying Butler's motion to dismiss the indictment, the judge stated that "[w]hen, as here, defendant is not subject to 'actual restraints' on his freedom for the matter at issue, the speedy trial protections are not implicated," S.A. 540. Setting aside the judge's legal conclusions, her statement that Butler

Butler does not offer any evidence of substantial deprivation of liberty during the relevant time period.  See Butler, 464 Mass. at 718-19.  The Supreme Judicial Court thus properly accorded this factor little weight.

The second factor by which prejudice should be assessed is the "anxiety and concern of the accused."  Barker, 407 U.S. at 532.  Here, Butler alleges no such anxiety, much less the type of "undue pressures" that are usually required under this inquiry.  United States v. Henson, 945 F.2d 430, 438 (1st Cir. 1999).  This factor thus appropriately carries little weight, a

---

was not subject to actual restraints for the charge at issue here suggests he was not incapacitated, or if he was, it was for other crimes.

Indeed, it appears that Butler was incapacitated on other charges during the time at issue here.  When Butler was sentenced, he was sentenced to nine years "to be served on or after the sentence [defendant] is presently serving." S.A. 10. This suggests that he was imprisoned on unrelated charges at the time of sentencing.

This conclusion, however, is not certain.  Butler, upon sentencing, was given 750 days of credit, S.A. 10, under Massachusetts General Laws chapter 279, § 33A, which provides that a sentencing court "shall order that the prisoner be deemed to have served a portion of said sentence, such portion to be the number of days spent by the prisoner in confinement prior to such sentence awaiting and during trial."  Mass. Gen. Laws. ch. 279, § 33A.  Under Massachusetts law, time spent serving a concurrent sentence should not be counted under section 33A, which suggests that Butler was incarcerated based on the charge at issue here.  See Commonwealth v. Barton, 74 Mass. App. Ct. 912, 913 (2009).

Because, however, Butler offers no evidence, much less clear and convincing evidence as required under AEDPA, to contradict the Supreme Judicial Court's factual conclusion that he was not incarcerated, this Court will assume that he was not.

determination especially true where, as here, the defendant "took no early action to expedite his trial." United States v. Santiago-Bercerril, 130 F.3d 11, 23 (1st Cir. 1997).

The final Barker factor by which prejudice should be assessed, and the most important, is the "possibility that the defense will be impaired." 407 U.S. at 532. Butler argues that his defense was impaired in three ways. First, "evidence went missing, including cushions, photographs of the broken door, and the written portion of the rape kit."[10] Pet. Mem. 16. Second, several unspecified witnesses have died or disappeared. Id.; see also Butler, 464 Mass. at 718. Third, several witnesses' memories had dimmed. Pet. Mem. 16.

The Supreme Judicial Court applied a presumption of prejudice framework and concluded that Butler "is entitled to some degree of presumptive prejudice that the Commonwealth can rebut with evidence that any delay left the defendant's 'ability to defend himself unimpaired.'" Butler, 464 Mass. at 717 (quoting Doggett, 505 U.S. at 658 n.4).

The Supreme Judicial Court examined these allegations of prejudice, and concluded that the "Commonwealth effectively

_____

[10] "The Commonwealth has conceded that the loss of cushions from the couch where intercourse occurred, photographs of the door the defendant allegedly kicked in, and the written pages of the rape kit used by the hospital where the victim received treatment following the incident with the defendant have been lost due its negligence." Butler, 464 Mass. at 718.

rebutted the presumption of prejudice." Butler, 464 Mass. at

718-19.  Turning first to the photographs, the state court held

that the "acquittal on the burglary charge and conviction of the

lesser included offense of rape (as opposed to aggravated rape)

suggests the loss of the photographs of the door actually inured

to the defendant's benefit." Id. at 718.  This Court may

quibble with the conclusion that the loss of the photographs of

the door benefited Butler, but it is not an unreasonable

conclusion, especially given the burglary acquittal and the fact

that witnesses at trial, including Butler, testified that the

door was kicked in, Resp't's Mem. 26, that the loss of this

material was not prejudicial.

Turning next to the couch cushions, the Supreme Judicial

Court noted that because "the defendant conceded intercourse

(and his admission is corroborated by DNA evidence), the loss of

these items . . . can hardly be seen as prejudicial." Butler,

464 Mass. at 718.  This, again, is not an unreasonable

conclusion, and Butler does not assert otherwise. See Pet. Mem.

18.

The third lost item, the missing pages from the rape kit,

is more complicated, especially given that there could be

contemporaneous materials within those pages relevant to the key

issue of consent.  The Superior Court, upon denying Butler's

motion to dismiss the indictment, concluded that it was "not

persuaded that the loss of the written portion of the rape kit would prejudice [the] defendant since contemporary statements of the complainant and the semen analysis are available to him."[11] S.A. 543. The Supreme Judicial Court further noted that "[t]he percipient witnesses to the rape (the defendant and the victim) were available and testified at trial," and that while "the victim was unable to remember some details of the rape [that was] offset by her ability to recall several statements the defendant made during intercourse that went to the crucial issue of consent." Butler, 464 Mass. at 718. Butler does not discuss how, in light of the alternative available evidence, the missing pages prejudiced him. See Pet. Mem. 18. Given that "[a]s a general rule, the defendant bears the burden of alleging and proving specific ways in which the delay attributable to the sovereign unfairly compromised his ability to defend himself," Rashad, 300 F.3d at 34 (citing United States v. Aguirre, 994 F.2d 1454, 1455 (9th Cir. 1993)), it would not be unreasonable

---

[11] In the Commonwealth's opposition to the motion to dismiss, the state noted: "The existing medical records contain the results of the physical examination of the complaining witness. The existing medical records also contain some significant statements of the complaining witness concerning the alleged sexual assault. While it is possible that the written pages of the rape kit included a more detailed statement of the incident, there is no reason to think those statements would be exculpatory. Also, that information is available elsewhere: the complaining witness spoke to numerous people about the incident on the same day she went to the hospital, including [a police officer], and she wrote a detailed statement three days later which is available to the defendant." S.A. 522.

for the Supreme Judicial Court to conclude that there was no or only minimal prejudice.

Turning next to the alleged unavailability of witnesses, the Supreme Judicial Court concluded that the key witnesses – the defendant and victim – were present and testified, and that "the potential significance to the defense of the testimony of the unspecified witnesses is unknown." <u>Butler</u>, 464 Mass. at 718. A claim that unknown witnesses would be able to proffer unknown testimony is, however, of limited use in a prejudice claim. <u>See</u> <u>United States</u> v. <u>Henson</u>, 945 F.2d 430, 438 (1st Cir. 1991) ("As we cannot assess an impairment claim stemming from the alleged demise of an unidentified 'possible alibi witness' absent the benefit of some understanding as to the nature of the putative alibi defense and of the anticipated testimony, the present claim must be rejected."). Similarly, the claim that a witness had died, without an assessment of who that witness was or what testimony he or she would offer, is also of limited use.

The final issue is the dimming of witnesses memories. The Supreme Court has held that although the "absence or loss of memory of witnesses" can be a factor in a speedy trial violation, it is not sufficient to support such a claim. <u>Loud Hawk</u>, 474 U.S. at 315 . Here, while Butler states that "trial witnesses admitted to memory failures some sixty times," Pet. Mem. 17, he does not posit what the potential impact of such

30

failures would be.  Faded memories are therefore not enough to justify a finding of prejudice.  See United States v. Trueber, 238 F.3d 79, 91 (1st Cir. 2001).  Moreover, the Supreme Judicial Court found that:

> That the victim was unable to remember some details of the rape was offset by her ability to recall several statements the defendant made during intercourse that went to the crucial issue of consent.  What is more, whether intercourse is consensual is not a subject typically vulnerable to memory loss.

Butler, 464 Mass. at 718 (citation omitted).  Such a conclusion, especially given the presumptions this AEDPA Court must employ, is not unreasonable.

Thus, on the fourth factor of prejudice, the Supreme Judicial Court's conclusion that prejudice weighed against Butler is not unreasonable.

### e.  Conclusion

Stepping back, the third and fourth Barker factors are, at best, neutral toward Butler, and the first two factors involve delay times that are within those found reasonable by the Supreme Court.  Moreover, this Court must evaluate such factors pursuant to AEDPA's unreasonable application prong, which requires the state court holding to be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," Harrington, 562 U.S. 86, 103 (2011),

and gives a general or multi-factor standard, like <u>Barker</u>, even more leeway, <u>id.</u> at 101.  Given such a context, this Court cannot conclude that the Supreme Judicial Court's decision is an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d).

Butler's habeas claim on speedy trial grounds is thus DENIED.

### C.    Ineffective Assistance of Counsel

The Sixth Amendment provides a right to the "reasonably effective assistance" of counsel.  <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 687 (1984).  This right extends to appellate counsel. <u>See</u> <u>Smith</u> v. <u>Robbins</u>, 528 U.S. 259, 285 (2000).

### 1.    Standard of Review

The test as to whether counsel is effective was set out by the Supreme Court in <u>Strickland</u> v. <u>Washington</u>, which provides a two-part test: the court must first "determine whether counsel's representation 'fell below an objective standard of reasonableness.'"  If so, it then asks "whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  <u>Padilla</u> v. <u>Kentucky</u>, 559 U.S. 356, 366 (2010) (quoting <u>Strickland</u>, 466 U.S. at 688, 694).  "Surmounting <u>Strickland</u>'s high bar is never an easy task," <u>id.</u> at 371, and

"[j]udicial scrutiny of counsel's performance must be highly deferential," Strickland, 466 U.S. at 689. Moreover, the reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

Where, as here, a Strickland claim is evaluated in the context of an AEDPA action, the standard of review is heightened even further. The Supreme Court has recognized that:

> The standards created by Strickland and [AEDPA] are both highly deferential, and when the two apply in tandem, review is 'doubly' so. . . . Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under [AEDPA]. When [AEDPA] applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105 (internal citations and quotation marks omitted).

### 2. The Supreme Judicial Court Decision

After holding that Butler's constitutional right to a speedy trial was not violated, the Supreme Judicial Court turned to Butler's ineffective assistance of counsel argument. There, it held that:

> [B]ecause the decision not to advance a losing argument does not fall 'measurably below that which might be expected from an ordinary fallible lawyer,' and because the defendant was not 'deprived of an otherwise available, substantial ground of deference' by virtue of his counsel's decision not to advance a

33

> constitutional speedy trial argument on direct appeal,
> we conclude that the defendant was not denied the
> effective assistance of counsel.

Butler, 464 Mass. at 719-20 (quoting Commonwealth v. Saferian,

366 Mass. 89, 96 (1974)).

In drawing this conclusion, the Supreme Judicial Court

applied Saferian, which "for habeas purposes . . . is a

functional equivalent of Strickland." Ouber, 293 F.3d at 32.

Since the state court applied the proper law, this Court

therefore applies AEDPA's unreasonable application prong. See

Yeboah-Sefah v. Ficco, 556 F.3d 54, 70 (1st Cir. 2009).

Butler is unable to show sufficient prejudice to satisfy

AEDPA and Strickland's double deference standard.[12]  In order for

a counsel's failure to make a legal argument to be considered

ineffective assistance, the defendant "must show a reasonable

probability that, but for his counsel's unreasonable failure to

file a merits brief, he would have prevailed on his appeal."

Smith v. Robbins, 528 U.S. 259, 285 (2000).  When Strickland is

viewed through AEDPA's lens, the question for this Court is

"whether there is any reasonable argument that counsel satisfied

Strickland's deferential standard." Harrington, 562 U.S. at

105.

---

[12] Strickland instructs that a reviewing court may first
review the prejudice prong, "[i]f it is easier to dispose of an
ineffectiveness claim on th[at] ground," rather than the
performance prong.  466 U.S. at 697.

The failure to raise a meritless issue defeats an
ineffective assistance claim.  <u>Laws</u> v. <u>Stephens</u>, 536 F. App'x
409, 414-15 (5th Cir. 2013) ("Because [defendant]'s speedy-trial
claim lacks merit, his ineffective assistance claim necessarily
fails. . . . [Defendant] could not have suffered prejudice from
[counsel]'s failure to brief a nonmeritorious issue.") (citing
<u>Smith</u>, 528 U.S. at 285); <u>McCray</u> v. <u>Rednour</u>, 441 F. App'x 376,
379 (7th Cir. 2011) ("Since a fairminded jurist could conclude
that [defendant]'s argument lacked merit and that counsel was
not ineffective for failing to pursue a nonmeritorious motion to
suppress, the appellate court reasonably applied <u>Strickland</u> in
reaching its decision.") (internal citation omitted).  Moreover,
"[a] state court's determination that a claim lacks merit
precludes federal habeas relief so long as 'fairminded jurists
could disagree' on the correctness of the state court's
decision."  <u>Harrington</u>, 562 U.S. at 101 (quoting <u>Yarborough</u>, 541
U.S. at 664).

Here, the Supreme Judicial Court concluded that advancing a
speedy trial claim was a "losing argument."  <u>Butler</u>, 464 Mass.
at 719.  As discussed above, this Court, given the presumptions
it must employ, cannot conclude that all fairminded jurists
would agree that such a conclusion was unreasonable.  Given that
consideration, there is a reasonable argument that Butler's

counsel satisfied his obligations under <u>Strickland</u>, and Butler's ineffective assistance claim must be DENIED.

**III. CONCLUSION**

For the aforementioned reasons, Butler's petition for a writ of habeas corpus, ECF No. 1, is DENIED.

**SO ORDERED.**

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
DISTRICT JUDGE